IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

HIRANI ENGINEERING AND LAND
SURVEYING, P.C.,

Plaintiff,

v.                                                   Civil Action No. 09-252-RGA

MEHAR INVESTMENT GROUP, LLC,
d/b/a MIG ENVIRONMENTAL, and
HARDEEP S. GAHUNIA, P.E.,

Defendants.

## MEMORANDUM OPINION

G. Kevin Fasic, Esq., Cooch & Taylor, P.A., Wilmington, Delaware, Attorney for Plaintiff Hirani Engineering.

Kevin S. Mann, Esq., Cross & Simon, LLC, Wilmington, Delaware, Attorney for Defendant Mehar Investment Group.

July 17, 2012
Wilmington, Delaware

ANDREWS, U.S. DISTRICT JUDGE:

Hirani Engineering and Land Surveying ("Hirani") sued Mehar Investment Group d/b/a MIG Environmental ("MIG") for breach of contract, negligence, and professional malpractice. The claims arose out of a dispute involving an environmental remediation project in 2006, in which Hirani was a contractor and MIG was a subcontractor. Hirani claims damages of $352,000.

MIG[1] had an insurance policy with Indian Harbor Insurance Company, which was supposed to have covered MIG's work in relation to this project. MIG filed a third-party complaint against Indian Harbor, seeking a declaratory judgment that Indian Harbor had a duty to indemnify and defend MIG in this suit. (D.I. 37). I earlier ruled that the insurance contract did not provide coverage and dismissed the third-party complaint. (D.I. 51).

MIG has now moved for summary judgment against Hirani. (D.I. 59). The matter has been fully briefed. (D.I. 60, 61, 64, 66). The basis for the motion is a "Settlement Agreement and Release" that the parties, along with Westchester Fire Insurance Co., entered into on February 27, 2009. (D.I. 61, A:1-10). The agreement, which is ten pages, is the entire agreement between the parties and "may not be modified in any way other than in a writing executed by all Parties . . . ." (*Id.*, A:9, ¶10).

The settlement agreement provided, in relevant parts, that one consequence of its varied promises and conditions was that, if MIG fulfilled them, then Hirani would withdraw its state court case against MIG, with prejudice. (*Id.*, A:5, ¶ 1(e)). The only promise that is now at issue

---

[1] It is my recollection from the Rule 16 conference that MIG may be having financial problems, which would add some context to the present dispute. Such information is not, however, presented as a part of the present dispute.

2

is the one contained in ¶ 2(b), which states:

> Insofar as Hirani alleges that the [$352,925] paid to [MPI] is the result of a design error caused by [the co-defendant Mr. Gahunia], and insofar as Hirani alleges that Mr. Gahunia's allegedly flawed work is the responsibility of MIG and insofar as MIG has reported this claim to its insurance carrier, which initially denied the claim, Hirani reserves the right to pursue this claim against MIG, its insurance carrier, and/or Mr. Gahunia. Hirani understands that should this claim be pursued, MIG has a duty to provide its best efforts to assist its insurance carrier in the defense of this action. Hirani further agrees that, if it pursues the claim based upon the alleged design flaws of Mr. Gahunia, and is successful, that it will not attempt to collect any amount from MIG beyond the amount that MIG's insurance carrier is compelled (or agrees in settlement) to pay; in other words, as part of the overall settlement of various outstanding matters between Hirani and MIG, Hirani agrees that MIG will not have to make any out-of-pocket payment to Hirani or Westchester for the alleged Gahunia design error beyond amounts that are paid by MIG's insurance carrier. Hirani indemnifies MIG from any claims raised against MIG by Mr. Gahunia for contribution or indemnification based upon the claims made by Hirani against Mr. Gahunia. In response to any suit filed by Hirani against it, MIG shall provide notice of such suit to any insurance carrier that may be in a position to provide coverage with respect to Hirani's claim. In the event any insurance carrier provided with notice by MIG declines to defend or cover said claims MIG will use its best efforts to add said insurance carrier as a party in the suit brought by Hirani against MIG so as to exercise MIG's contractual rights within the coverage of any applicable insurance policy to provide insurance coverage for Hirani's claim(s) against MIG.

(*Id.*, A6, ¶ 2(b)).

The primary dispute between the parties, at this point, is the interpretation of the contract. MIG's argument is straightforward. MIG used its best efforts to bring its insurance carrier into the lawsuit, which included suing the carrier. MIG therefore complied with the terms of the agreement. The fact that MIG lost the suit is irrelevant. (D.I. 60, p. 2). Hirani's argument is two-fold: (1) MIG did not comply with the agreement, as the agreement required that Hirani be successful; and (2) MIG defrauded Hirani, since MIG knew that it had no insurance coverage. (D.I. 64, pp. 5-7).

The settlement agreement provides that it is to be interpreted under Delaware law. (D.I.

3

61, A:10, ¶ 13). The three briefs submitted in connection with the motion are noteworthy for not citing a single Delaware case for any principle of contract law. (D.I. 60, 64, 66).

A settlement agreement is a contract. *See Parker-Hannifin Corp. v. Schlegel Elec. Materials, Inc.*, 589 F. Supp. 2d 457, 461 (D. Del. 2008). The interpretation of a contract is a matter of law. *See Hudson v. State Farm Mut. Ins. Co.*, 569 A.2d 1168, 1170 (Del. 1990). The Court believes there is no ambiguity in the contract, and thus resolution of its meaning at the summary judgment stage is appropriate. *See Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195-96 (Del. 1992) (contract not ambiguous simply because parties disagree on its construction).

The settlement agreement contemplates that MIG might not be successful in its efforts to bring in its insurance carrier. The settlement agreement recites that MIG's insurance carrier had already "initially denied the [very] claim [that is in issue in this lawsuit]." (D.I. 61, A:9, ¶ 2(b)). The settlement agreement recites that MIG is to provide notice of the present lawsuit "to any carrier that may be in a position to provide coverage with respect to Hirani's claim." *Id.* Further, if an insurance carrier "declines to defend or cover said claims MIG will use its best efforts to add said insurance carrier as a party in the suit brought by Hirani against MIG . . . ." *Id.* It seems clear that everyone knew that insurance carriers do not always agree that they have a duty to defend or indemnify, and that when they are sued, one possible outcome is that their position would be sustained.

Hirani points to the language that states:

if [Hirani] pursues the claim based upon the alleged design flaws of Mr. Gahunia, and is successful, that it will not attempt to collect any amount from MIG beyond the amount that MIG's insurance carrier is compelled (or agrees in settlement) to pay;

4

in other words, ... Hirani agrees that MIG will not have to make any out-of-pocket payment to Hirani or Westchester for the alleged Gahunia design error beyond amounts that are paid by MIG's insurance carrier.

*Id.* Hirani particularly emphasizes the "is successful" portion. (D.I. 64, pp. 3, 6). Hirani says that Hirani has not been successful, and thus MIG can not enforce the settlement agreement. In my opinion, the "claim ... is successful" language is to be contrasted with the possibility that the claim would be "unsuccessful." The "claim" is that "Mr. Gahunia's allegedly flawed work is the responsibility of MIG." If the claim "is successful," then MIG would be responsible, and if MIG had insurance coverage, then the insurance company would pay Hirani. If the claim is unsuccessful, then MIG would not be responsible, and whether it had insurance coverage would be unimportant, because neither MIG nor the insurance company would owe Hirani anything. Thus, the only reasonable interpretation of the settlement agreement provision is that as long as MIG did what it promised to do (that is, try its best to bring in its insurance carrier), MIG had fulfilled its responsibilities under this provision.[2]

Hirani's other argument is premised on the proposition that MIG represented that it had appropriate insurance coverage. Hirani provided a 2007 certificate of liability insurance, which appears to have been submitted to Hirani on MIG's behalf by an insurance broker to show MIG's coverages. (D.I. 64-1, AH:1). There is no sworn or documentary evidence in the record to suggest that MIG knew its insurance coverage was not appropriate. Both MIG and Hirani knew, at the time of the settlement agreement, that the insurance company had denied coverage. The suit by MIG against the insurance company is evidence of MIG's good faith. Simply because the

---

[2] Hirani does not contest that MIG "complied with the requirement to attempt to add [MIG's] carrier as a party to this action . . . ." (D.I. 64, p. 6).

5

insurance company's position was ultimately upheld after litigation does not provide any factual basis for alleging that MIG entered into the settlement agreement fraudulently or concealed some material fact from Hirani at some relevant time.

Hirani has filed a motion for leave to amend the complaint to allege a count of common law fraud. (D.I. 62). The motion is timely. The motion, however, will be denied. The count of common law fraud is, to put it charitably, conclusory. It adds seven new paragraphs. (D.I. 62-1, ¶¶ 30-36). The person who "represented to Hirani that MIG had secured insurance coverage" is identified by name. (*Id.*, ¶ 31). The date that MIG's insurance carrier had denied coverage is identified as October 2007. (*Id.*, ¶ 33). It thus alleges that MIG knew that its insurance carrier had denied coverage before the settlement agreement and before bringing the third-party suit against the insurance carrier. (*Id.*). More importantly, the only fact alleged for the proposition that MIG's managing member knew that the representation was false was that the insurance carrier had denied coverage, which was a fact disclosed to Hirani. Further, there is no allegation, and certainly no allegation with any specificity, that MIG's managing member knew that the insurance company's position was correct or would be determined by a court to be correct.

To state a claim for fraud under Delaware law, the Plaintiff must allege: "(1) defendant made a false representation; (2) with knowledge or belief of its falsity or with reckless disregard for the truth; (3) with an intent to induce the plaintiff into acting or refraining from acting; (4) plaintiff reasonably relied upon the misrepresentation; and (5) plaintiff was damaged as a result of the reliance." *Segovia v. Equities First Holdings, LLC,* 2008 WL 2251218, *21 (Del. Super. May 30, 2008). MIG concedes that "Hirani accurately recites the technical elements of a fraud claim." (D.I. 68, p. 4). MIG, however, also asserts that Hirani has not stated "with particularity

6

the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b).

> The stringent pleading restrictions of Rule 9(b), Fed. R. Civ. P., apply to such a claim: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other conditions of mind of a person may be averred generally." Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citations omitted).

MIG's argument clearly has merit. The fraud count does not allege the "date, time and place," and no one reading it could possibly think it alleges the "precise misconduct" that is supposed to have occurred. Thus, Hirani's fraud count fails to state a claim as required by Rule 9(b).

An appropriate order will issue.